FIRST PUBLIC CORPORATION v PARFET

Docket No. 203145. Submitted November 7, 2000, at Detroit. Decided March 16, 2001. Approved for publication May 22, 2001, at 9:20 A.M.

First Public Corporation brought an action in the Wayne Circuit Court against William U. Parfet and others, seeking damages in part for alleged breach of fiduciary duties and civil conspiracy. The court, Cynthia D. Stephens, J., granted several motions for summary disposition in favor of the defendants. First Public appealed and defendants Parfet, IRDC Acquisition Corporation, and MPI Research, L.L.C., cross appealed. First Venture Corporation and Lou Beer were added as plaintiffs, nunc pro tunc, pursuant to a stipulation entered into by the parties. The Court of Appeals granted a motion to affirm with regard to defendant IRDC Acquisition Company, L.L.C., only and entered an unpublished order dismissing it as a party to the appeal.

The Court of Appeals *held*:

1. The court did not err in determining that First Public met its burden of showing a genuine issue of material fact regarding the existence of a joint enterprise between First Public and defendant Caledonia Group, Inc. The court ruled too broadly, however, in finding that there was an issue of material fact regarding the existence of a partnership. The denial of the motion for summary disposition brought by Caledonia Group, Inc., must be affirmed to the extent that the court's ruling encompasses a joint enterprise.

2. The court did not err in determining the date on which the joint enterprise was terminated and that any fiduciary duties ended at that time, no wind-up period existed or was required, and an equitable accounting was unnecessary.

3. There were no fiduciary duties owed by Caledonia, Inc., to First Public when defendant J. W. Henry Watson signed a release document purportedly on behalf of Caledonia, Inc., and First Public after the date the joint enterprise was terminated.

4. First Public failed to establish a genuine issue of material fact with regard to damages attributable to a lost investment opportunity. Summary disposition was correctly granted with regard to this issue and the allegation of civil conspiracy that was based on the alleged lost investment opportunity.

5. The court properly granted summary disposition with regard to the claims of tortious interference and civil conspiracy against Watson in his individual capacity on the basis that Watson was acting as an agent for Caledonia, Inc.

6. The plaintiffs did not have the authority to enforce certain agreements regarding confidentiality and noncompetition with regard to the breach of contract claims against defendants Parfet, IRDC Acquisition Corporation, and MPI Research, L.L.C.

7. The court properly found that the question presented by the plaintiffs regarding alleged interference with the relationship between First Public and Caledonia, Inc., provided no basis for relief.

8. The plaintiffs failed to present any argument for disturbing the grant of summary disposition with regard to the claims against defendant Thomas J. Hoogeboom.

Affirmed.

1. APPEAL — ARGUMENTS OF APPELLEES.

An appellee may urge in support of a judgement in its favor reasons rejected by a trial court without taking a cross appeal.

2. WORDS AND PHRASES — JOINT ENTERPRISES.

A joint enterprise generally is an undertaking to carry out a small number of acts or objectives entered into by associates under such circumstances that all have an equal voice in directing the conduct of the enterprise.

3. JOINT VENTURES — CONTRACTS.

The nature of a joint venture, including the duties, responsibilities, and liabilities of the parties between themselves and to others, in large measure flows from the agreement entered into; contract law is used to construe the parties' intent as manifested by their words and actions; the law will supply the missing details by construction where the agreement contains essential terms but the details of performance are missing; a joint venture may be terminated at any time where the parties have not stipulated its duration.

4. EQUITY — EQUITABLE ACCOUNTING ACTIONS.

An action for an equitable accounting is not appropriate where the claim is for a sum certain.

*Bendure & Thomas* (by *Mark R. Bendure* and *Kevin P. Kavanagh*), for First Public Corporation, First Venture Corporation, and Lou Beer.

*Howard & Howard Attorneys, P.C.* (by *James H. Geary*), for William U. Parfet, IRDC Acquisition Corporation, and MPI Research, L.L.C.

*Verspoor, Waalkes, Lalley, Slotsema & Talen, P.C.* (by *Daniel J. Slotsema*), for Thomas J. Hoogeboom.

*Richard L. Steinberg, P.C.* (by *Richard L. Steinberg*), for J. W. Henry Watson, Caledonia Group, Inc., and IRDC Acquisition Company, L.L.C.

Before: GRIBBS, P.J., and M. J. KELLY and SAWYER, JJ.

PER CURIAM. Plaintiff First Public Corporation (First Public) filed this appeal as of right, challenging several orders granting summary disposition in favor of the various defendants. Defendants William U. Parfet (Parfet), IRDC Acquisition Corporation, and MPI Research, L.L.C. (hereafter collectively referred to as the Parfet defendants), have filed a joint cross appeal for the purpose of advancing alternative reasons in support of the trial court's grant of summary disposition in their favor. During the pendency of this appeal, the other two appellants, First Venture Corporation (First Venture) and Lou Beer (Beer), were added as plaintiffs, nunc pro tunc, pursuant to a stipulation entered into by the parties. This Court previously granted a motion to affirm by defendant IRDC Acquisition Company, L.L.C. Unpublished order of the Court of Appeals, entered July 17, 1998 (Docket No. 203145). Having considered plaintiffs' arguments regarding the other defendants, we find that they have not shown any basis for disturbing the trial court's orders of summary disposition. Hence, we affirm.

I

We first consider plaintiffs' claims concerning the two motions for summary disposition brought by defendants J. W. Henry Watson and Caledonia Group, Inc. (hereafter collectively referred to as the Watson defendants and individually as Watson and Caledonia, Inc.). We review de novo the trial court's decisions granting summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998).

Plaintiffs first claim that there are issues of fact concerning the existence of a "joint venture" or "partnership." We note that the trial court ruled in plaintiffs' favor in deciding the Watson defendants' motions, holding during the hearing on the first motion that summary disposition should be denied under MCR 2.116(C)(8) (failure to state a claim) because "there is probably enough to assert a joint venture" and during the hearing on the second motion that summary disposition should be denied for Caledonia, Inc., under MCR 2.116(C)(10) (no genuine issue of material fact for trial) because

> Plaintiff can meet its burden of going forward on whether there is a joint venture by virtue of the purported admissions on the part of both parties, the non-compete agreement and other activities that are asserted on the part of the various parties, the court believes they could meet their burden of going forward as to whether or not there was a joint partnership or joint venture.

However, we will address plaintiffs' claim because the relationship between the parties is an essential issue in this case and Caledonia, Inc., argues that there was no joint venture. An appellee may urge in support of a judgment in its favor reasons rejected by

a trial court without taking a cross appeal. *Ass'n of Businesses Advocating Tariff Equity v Public Service Comm*, 192 Mich App 19, 22; 480 NW2d 585 (1991). Because the proper resolution of this issue requires a consideration of proofs outside the pleadings, we limit our review to the trial court's decision holding that there was no genuine issue of material fact for trial under MCR 2.116(C)(10). *Spiek, supra* at 337. In reviewing the trial court's decision, we consider the affidavits, pleadings, depositions, admissions, and documentary evidence submitted by the parties, MCR 2.116(G)(5), in a light most favorable to the opposing party. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The granting of summary disposition is appropriate if the opposing party fails to present evidentiary proofs creating a genuine issue of material fact for trial. *Smith v Globe Life Ins Co*, 460 Mich 446, 456; 597 NW2d 28 (1999).

We conclude that the trial court did not err in determining that the opposing party, First Public,[1] met its burden of showing a genuine issue of material fact regarding the existence of a joint relationship with Caledonia, Inc. However, the trial court made too broad a ruling when it determined that a factual question existed concerning the existence of either a partnership or a joint venture.

We note that the specific relationship pleaded in the first amended complaint was a joint venture, not a partnership. However, even if the first amended

---

[1] Although the parties stipulated that First Venture and Beer be added nunc pro tunc as plaintiffs, the stipulation applies to the extent that the trial court's rationale would equally apply to all three. Hence, we will consider plaintiffs' arguments as they were presented by First Public to the trial court.

complaint could be construed as alleging a partnership, First Public did not present evidentiary proofs showing the existence of a legal partnership. The use of the word "partner" by Beer and Watson, in their representative capacities for First Public and Caledonia, Inc., was not controlling and was insufficient, under the circumstances of the case, to create a genuine issue of fact for trial. *Miller v City Bank & Trust Co*, 82 Mich App 120; 266 NW2d 687 (1978). The absence of evidence that First Public and Caledonia, Inc., carried on a business as coowners for profit was fatal to a claim of partnership. *Moore v DuBard*, 318 Mich 578, 593-594; 29 NW2d 94 (1947); MCL 449.6(1).

Plaintiffs' reliance on *Opdyke Investment Co v Norris Grain Co*, 413 Mich 354; 320 NW2d 836 (1982), to argue that a factual issue was shown with regard to the existence of a "joint venture" or "partnership" is misplaced. It is true that, as a principle of contract law, parties can execute a series of increasingly detailed contracts as a project proceeds, with each contract legally binding. *Id.* at 360. However, viewing the proofs most favorable to First Public, the only intent evidenced here by an objective standard, relying on both the express words of the parties and their visible acts, was a joint enterprise between First Public and Caledonia, Inc., to find investors with whom they could form an association to try to purchase the International Research and Development Corporation (IRDC) or its assets and that could have potentially taken on the form of a limited partnership. See *Kamalnath v Mercy Memorial Hosp Corp*, 194 Mich App 543, 548; 487 NW2d 499 (1992) (a valid contract requires a meeting of the minds on all essential terms); *LeZontier v Shock*, 78 Mich App 324, 333; 260

NW2d 85 (1977) (intent is of prime importance in ascertaining the existence of a partnership); *Berger v Mead*, 127 Mich App 209, 215; 338 NW2d 919 (1983) (intent is the key consideration in determining the existence of a joint venture).

While the phrases "joint venture" and "joint enterprise" are sometimes used interchangeably, we find the phrase "joint enterprise" to provide the more accurate characterization of the legal relationship between First Public and Caledonia, Inc., with regard to which a genuine issue of material fact existed, because there is no evidence that the undertaking to find investors was in and of itself a project for profit. A "joint enterprise" is generally defined as " 'an undertaking to carry out a small number of acts or objectives, which is entered into by associates under such circumstances that all have an equal voice in directing the conduct of the enterprise.' " *Id.* at 216, n 5, quoting 48A CJS, Joint Ventures, § 3, p 395.

In sum, while the trial court's ruling was too broad, we uphold its denial of the second motion for summary disposition brought by Caledonia, Inc., under MCR 2.116(C)(10) to the extent the ruling encompasses a "joint enterprise." With evidence of this business relationship in mind, we next consider plaintiffs' claim concerning the trial court's grant of the first motion for summary disposition brought by Caledonia, Inc., under MCR 2.116(C)(10) regarding the duration of the "joint enterprise." Upon review de novo, we conclude that plaintiffs have not demonstrated error in the trial court's consideration of Beer's fax, dated July 23, 1995, as the time of termination.

In a joint venture context, the "nature of that venture, the duties, responsibilities and liabilities of the

parties between themselves and to others would in a large measure flow from the agreement they entered into." *Goodwin v S A Healy Co*, 383 Mich 300, 307; 174 NW2d 755 (1970). A court relies on contract law to construe the parties' intent. *Id.* at 309. Intentions are manifested by words and actions, and not a secret intent. See, e.g., *Paul v Bogle*, 193 Mich App 479, 493-494; 484 NW2d 728 (1992) (addressing contract repudiation). Further, if a contract contains essential terms, but details of performance are missing, the law will supply the missing details by construction. *Nichols v Seaks*, 296 Mich 154, 159; 295 NW 596 (1941). A joint venture, like a partnership, that does not contain a stipulation for its duration may be terminated at any time. *Posner v Miller*, 356 Mich 6, 9; 96 NW2d 110 (1959).

Having considered the proofs presented to the trial court at the time of the first motion for summary disposition, we uphold the court's determination that July 23, 1995, was the termination date as well as the court's related rulings that any fiduciary duties ended at that time, that no wind-up period existed, and that an equitable accounting was unnecessary. First Public did not meet its burden of showing a genuine issue of material fact regarding the date of termination. Beer's unambiguous words in the fax that he could not rely on Watson to represent his interests and "henceforth our dealings should be at arm's length" established an effective termination. Cf. *Kilgus v Hood*, 290 Mich 355, 360; 287 NW 554 (1939). We note, however, that it is perhaps more accurate to say that Lou Beer, as First Public's agent, terminated any authority of Watson, as an agent of Caledonia Inc., to act on behalf of First Public, inasmuch as Beer did not totally with-

draw from the objective of the project involving the acquisition of IRDC. As a principle of agency law, it is a general rule that "a principal may revoke the authority of his agent at any time, but the acts of an agent after his authority has been revoked may bind a principal as against third persons who, in the absence of notice of the revocation of the agent's authority, rely upon its continued existence." *LaFond v Rumler*, 226 Mich App 447, 458; 574 NW2d 40 (1997).

We reject plaintiffs' argument that there could be no termination in the case at bar until the affairs of the parties were wound up. We note that even partnership law imposes limitations on a partner's authority to act when the partnership terminates. MCL 449.33. Because this case involves evidence of a joint enterprise, we rely on the parties' agreement, rather than the statute governing partnerships, as a key factor in determining authority to act. Cf. *American Mut Liability Ins Co v Hanna, Zabriskie & Daron*, 297 Mich 599, 606-607; 298 NW 296 (1941); *Reed & Noyce, Inc v Municipal Contractors, Inc*, 106 Mich App 113, 119; 308 NW2d 445 (1981). Here, the authority of either party to the "joint enterprise" to act on behalf of the other was plainly terminated at the time of Beer's July 23, 1995, fax.

In any event, while equitable principles for winding up partnerships have been applied to joint ventures, *Posner, supra* at 9, we find that plaintiffs have not identified any affairs in the case at bar that required winding up. To the extent that plaintiffs' claim may be based on intangible assets of the joint enterprise, namely, agreements regarding confidentiality and noncompetition, we are unpersuaded that the mere

existence of the agreements gave rise to any duties that require winding up.

To the extent plaintiffs' claim seeks a share of the $100,000 paid by Parfet pursuant to the release document that Watson purportedly exercised on behalf of Caledonia, Inc., and First Public after July 23, 1995, we note that First Public claimed that this was an authorized act. The authorized act did not revive the prior agency relationship or otherwise create a fiduciary duty. A fiduciary relationship arises from "the reposing of faith, confidence, and trust and the reliance of one upon the judgment and advice of another." *Vicencio v Jaime Ramirez, MD, PC,* 211 Mich App 501, 508; 536 NW2d 280 (1995). An authorized act may, however, be ratified. See *City Nat'l Bank of Detroit v Westland Towers Apartments,* 152 Mich App 136, 142-143; 393 NW2d 554 (1986). In any event, even if there had been a ratification, which we note was not claimed by First Public in the case at bar, it was not error for the trial court to deny an equitable accounting. An equitable accounting is not an appropriate action when the claim is for a sum certain. *Boyd v Nelson Credit Centers, Inc,* 132 Mich App 774, 777; 348 NW2d 25 (1984).

In sum, we hold that plaintiffs have not established any basis for disturbing the trial court's ruling that July 23, 1995, was the termination date or its related rulings regarding the consequences of the termination. Stated otherwise, the agency relationship of First Public and Caledonia, Inc., terminated on July 23, 1995. Further, while the trial court did err in finding a genuine issue of material fact regarding the existence of a partnership, it did not err with regard to the issue of the existence of a joint venture or, more

accurately, the existence of a joint enterprise before July 23, 1995.

Plaintiffs next argue that their claims for damages against Watson and Caledonia, Inc., are viable. Because the trial court decided this issue in resolving the second motion for summary disposition brought by Caledonia, Inc., under MCR 2.116(C)(10), we consider plaintiffs' claim in this context.

We note that the actions pleaded by First Public against Caledonia, Inc., were for breach of fiduciary duties and civil conspiracy. The breach of fiduciary duties count sought a measure of damages attributable to both a share of the $100,000 from the release and a lost investment opportunity to purchase IRDC assets. Because there were no fiduciary duties owed by Caledonia, Inc., when the release was executed, we find it unnecessary to address the claim for $100,000 under this theory. We express no opinion regarding whether some other cause of action could have been pursued by plaintiffs for a share of the $100,000, because no such cause of action was pleaded or properly before us for review. With regard to the measure of damages attributable to a lost investment opportunity, we conclude that First Public failed to establish a genuine issue of material fact for trial regarding the fact of damages. *Smith, supra* at 456. See also *Joerger v Gordon Food Service, Inc,* 224 Mich App 167, 175; 568 NW2d 365 (1997); *Bonelli v Volkswagen of America, Inc,* 166 Mich App 483, 511; 421 NW2d 213 (1988). Hence, the trial court correctly granted summary disposition with regard to the issue of damages.

Because the civil conspiracy count against Caledonia, Inc., also sought a measure of damages attribut-

able to the lost investment opportunity, we conclude that the absence of a genuine issue of material fact on this count is also dispositive of the civil conspiracy count.

With regard to the two counts pleaded against Watson in his individual capacity, we note that the trial court's ruling reflects that it granted summary disposition in favor of Watson with regard to the claim for tortious interference on the basis of his agency status with Caledonia, Inc., rather than in reliance on its rulings regarding damages. Although plaintiffs' failure to address this basis for the trial court's decision in their brief on appeal could itself preclude relief, *Joerger, supra* at 175, we will briefly address it because it has been briefed by plaintiffs in reply to the arguments presented in the Watson defendants' appeal brief. We hold that the trial court did not err in granting summary disposition in favor of Watson on the basis of his agency status. In the face of Watson's evidence concerning the actions taken by the board of directors of Caledonia, Inc., regarding the release, the evidence that Watson was the named payee on the checks for the $100,000 does not create a genuine issue of material fact regarding whether Watson was furthering strictly personal motives. *Smith, supra* at 456; *Quinto, supra* at 362. See also *Feaheny v Caldwell,* 175 Mich App 291; 437 NW2d 358 (1989). Because Watson was acting as an agent of Caledonia, Inc., and no other actionable tort is alleged against Watson in an individual capacity, the civil conspiracy count also fails. *Roche v Blair,* 305 Mich 608, 613-614; 9 NW2d 861 (1943); *Early Detection Center, PC v New York Life Ins Co,* 157 Mich App 618, 632; 403 NW2d 830 (1986).

## II

Plaintiffs next claim that the Parfet defendants were not entitled to summary disposition of the breach of contract and tortious interference claims. In reviewing this claim, we note that the plaintiffs have remedied a deficiency in the record regarding the missing transcript for the hearing on the Parfet defendants' motion. However, plaintiffs' failure to address the basis of the trial court's ruling on the motion could preclude appellate relief. *Joerger, supra* at 175; *Goolsby v Detroit*, 419 Mich 651, 655, n 1; 358 NW2d 856 (1984). In any event, plaintiffs have not presented any persuasive argument for disturbing the trial court's decision to grant summary disposition pursuant to MCR 2.116(C)(10).

With regard to the breach of contract count brought against the Parfet defendants that was based on Parfet's conduct in September 1995 in forming the IRDC Acquisition Corporation to purchase IRDC assets, we note that the trial court decided the contract claim by referencing its ruling granting the Watson defendants' motion for summary disposition. The trial court specified that it "would first find that the group never existed, which was part of the ruling last week," and that the "contract speaks to an entity that never existed." However, on the basis of our review of the Watson defendants' motion for summary disposition, we find that the trial court's ruling concerning the Parfet defendants was not an accurate reflection of its prior ruling in connection with the Watson defendants' motions. However, we will not reverse because the trial court reached the right result. See

*D'Ambrosio v McCready*, 225 Mich App 90, 96, n 3; 570 NW2d 797 (1997).

The material question here was not whether the group ever existed, but, rather, whether First Public had authority to enforce the contract. Resolution of this question is not dependent on whether First Public or the two parties added nunc pro tunc, First Venture and Beer, are proper plaintiffs for purposes of bringing the contract action, but rather concerns the authority of any of these plaintiffs to stand in the shoes of the "group" on whose behalf the agreements regarding confidentiality and noncompetition were executed to enforce the "group's" rights. On this issue, we conclude that the Parfet defendants' motion for summary disposition should have been granted under MCR 2.116(C)(10), because the "group" included Caledonia, Inc. Further, First Public presented no evidence that First Public or either of the two added plaintiffs had authority to pursue a breach of contract claim on behalf of the "group." For reasons previously discussed, the evidence established that the agency relationship ended on July 23, 1995. It follows that First Public (and the other two added plaintiffs) had no more authority to enforce the "group's" contract rights than Caledonia, Inc., had to execute a release.

With regard to the tortious interference count, the question presented for our review is whether Parfet tortiously interfered with the business relationship between First Public and Caledonia, Inc. However, the first amended complaint itself alleged interference with the "joint venture's business relationship and/or expectancy with IRDC." Further, the trial court's ruling indicates that it treated the claim as involving inter-

ference with the relationship between the "group" and IRDC. It concluded that "the Court can't find that there is a valid business expectancy or business relationship or expectancy between an unformed group and anyone else." Again, we note that the trial court's reasoning did not reflect an accurate reflection of its ruling on the Watson defendants' motions for summary disposition. However, the right result was reached because First Public (and the other added plaintiffs) had no authority to act on behalf of the "group." For this reason, and given that plaintiffs have failed to establish any basis for disturbing the trial court's decision with regard to the meaning and scope of the tortious interference claim pleaded, *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997), we find that the question presented by plaintiffs regarding interference with the relationship between First Public and Caledonia, Inc., provides no basis for relief.

In passing, we note that, even if we were to treat plaintiffs' claim as one that could have been remedied by another amendment of the complaint, we would not reverse because the evidence did not justify an amendment of the tortious interference count. MCR 2.116(I)(5). See also *Michigan Podiatric Medical Ass'n v Nat'l Foot Care Program, Inc*, 175 Mich App 723, 735; 438 NW2d 349 (1989); *Bonelli, supra* at 499.

On the basis of the above findings, we find it unnecessary to consider the remaining arguments presented by the parties with regard to the tortious interference and breach of contract claims. Plaintiffs have not demonstrated any basis for vacating the trial court's grant of summary disposition.

III

Finally, plaintiffs claim that defendant Thomas J. Hoogeboom was not entitled to summary disposition of the breach of contract and tortious interference counts. Again, appellate relief could be denied because plaintiffs do not address the basis for the trial court's ruling. *Joerger, supra* at 175. In any event, we are not persuaded that plaintiffs have presented any argument for disturbing the trial court's decision granting summary disposition pursuant to MCR 2.116(C)(10).

We note that the breach of contract alleged in the first amended complaint was Hoogeboom's formation of defendant IRDC Acquisition Company, L.L.C., whose motion to affirm was previously granted by this Court. We also note that, in granting summary disposition of the breach of contract count, the trial court's ruling was somewhat ambiguous. However, its ruling reflects that the trial court was again relying on the nature of the relationship between First Public and Caledonia, Inc., and applying the rationale for the Parfet defendants' motion that there was "never [a] fully formed group," when the court determined that First Public could not go forward with a claim of breach of contract. As such, we conclude that our resolution of the breach of contract claim for the Parfet defendants applies equally to Hoogeboom. Hence, it is unnecessary to address whether there was factual support for a breach of contract claim seeking to recover the alleged lost investment opportunity, as pleaded in the first amended complaint. Nor is it necessary to consider alleged breaches argued by

First Public in opposition to Hoogeboom's motion that were not pleaded by First Public.

With regard to the tortious interference count pleaded against Hoogeboom, the question presented for our review is whether Hoogeboom tortiously interfered with the business relationship of First Public and Caledonia, Inc. We note, however, that the count in the first amended complaint was based on the same allegation made with regard to the Parfet defendants regarding the "joint venture's business relationship and/or expectancy with IRDC." We also note that, unlike its ruling on the Parfet defendants' motion, the trial court treated the claim as one concerning the business relationship between First Public and Caledonia, Inc. The trial court then granted summary disposition because "they never quite got to the point where they formed any level of relationship which could be legally protected" or from which there could be a valid claim of interference. A separate claim made by First Public regarding whether there was evidence of tortious interference by Hoogeboom in the relationship between the "group" (defined as First Public and Caledonia, Inc.) and Parfet, as a prospective purchaser, was treated as a motion to amend and was denied.

Although plaintiffs have not alleged in their brief the basis for the trial court's ruling, their arguments present no basis for disturbing the trial court's denial of leave to amend with regard to the theory involving the relationship with Parfet. MCR 2.116(I)(5); *Weymers, supra.* Further, while we do not agree with the trial court's determination that the relationship between First Public and Caledonia, Inc., could not be the basis for a tortious interference claim, we con-

clude that, as with the Parfet defendants' motion, this should have been treated as an unpleaded theory. Hence, the relevant query should have been whether to allow the amended complaint. MCR 2.116(I)(5). However, the correct result was reached because First Public did not show evidence justifying an amendment. *Id.*

Plaintiffs' claim on appeal that there was evidence to support a claim of interference with a valid business expectancy of First Public (or other added plaintiffs) and Caledonia, Inc., is unpersuasive because an "expectancy must be a reasonable likelihood or probability, not mere wishful thinking." *Trepel v Pontiac Osteopathic Hosp,* 135 Mich App 361, 377; 354 NW2d 341 (1984). Further, even if we were to disregard the question whether damages could be proved, we are unpersuaded that First Public demonstrated, in its response to Hoogeboom's motion for summary disposition, that it could pursue a claim of tortious interference with the business relationship between First Public and Caledonia, Inc. Although a false accusation may provide a basis for a tortious interference claim, *Wilkerson v Carlo,* 101 Mich App 629; 300 NW2d 658 (1980), a distinction must be made between a false statement of fact and opinions drawn from the facts. See, generally, *Ireland v Edwards,* 230 Mich App 607; 584 NW2d 632 (1998); *Fisher v Detroit Free Press, Inc,* 158 Mich App 409, 413; 404 NW2d 765 (1987). Plaintiffs have not identified a statement made by Hoogeboom that would support an actionable claim of tortious interference.

Further, we note that the agreements regarding confidentiality and noncompetition expressly recognized that the investment opportunity concerning IRDC

or other business relationship with the "group" would be evaluated. Because there was evidence that Hoogeboom had a legitimate reason for evaluating Beer's past relationship with IRDC, and there was no evidence of an act that was wrongful per se, we conclude that First Public failed to establish a legitimate need for amending the complaint. MCR 2.116(I)(5); *Bonelli, supra* at 499. Hence, while we do not agree fully with the trial court's reasoning, we conclude that plaintiffs have not demonstrated any basis for disturbing the result. *D'Ambrosio, supra.*

Affirmed. Defendants-appellees, being the prevailing parties, may tax costs pursuant to MCR 7.219.